Benjamin N. Gluck - State Bar No. 203997
    bgluck@birdmarella.com
Nicole R. Van Dyk - State Bar No. 261646
    nvandyk@birdmarella.com
Ashley D. Bowman - State Bar No. 286099
    abowman@birdmarella.com
Naomi S. Solomon - State Bar No. 321357
    nsolomon@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Plaintiff Richard Roe

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RICHARD ROE,<br><br>                 Plaintiff,<br><br>        vs.<br><br>UNITED STATES OF AMERICA, TRACY L. WILKISON (OFFICIAL CAPACITY), KRISTI KOONS JOHNSON (OFFICIAL CAPACITY),<br><br>        Defendants. | CASE NO. 2:21-cv-02919-RGK (MAR)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PER F.R.C.P. 12(b)(1) AND 12(b)(6)**<br><br>*[Filed Concurrently with Declaration of Benjamin N. Gluck]*<br><br>Date:      July 6, 2021<br>Time:      9:00 a.m.<br>Crtrm.:    850<br><br>Assigned to Hon. Gary R. Klausner<br><br>Complaint Filed:  April 5, 2021 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................ 5

II.  BACKGROUND FACTS ..................................................................... 7

    A.   The Government's Motions to Dismiss Plaintiffs' Claims................... 7

    B.   The Government's Administrative Forfeiture of Property Seized
        from USPV Box Holders ................................................................. 9

III. ARGUMENT ..................................................................................... 10

    A.   The Now-Terminated Administrative Forfeiture Is Not Grounds
        for Dismissal ................................................................................ 10

        1.   There are no pending forfeiture proceedings............................ 11

        2.   Plaintiffs each seek return of property that is not listed on
            the Government's forfeiture notice.......................................... 11

    B.   Plaintiffs Should Be Permitted To Proceed Pseudonymously
        Given The Stage Of The Proceedings And The Balance Of The
        Parties' Competing Interests ......................................................... 15

        1.   Plaintiffs face Fifth Amendment injury if they are forced
            to reveal their names. ........................................................... 16

        2.   The Government is not prejudiced by Plaintiffs'
            anonymity because it fails to establish its need for
            Plaintiffs' legal names, as opposed to any other identifying
            information, now. .................................................................. 18

        3.   The public's interest in Plaintiffs' identities is *de minimis*
            at best, and no greater than in any other proceeding. ............. 20

IV.  CONCLUSION .................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*E.E.O.C. v. ABM Indus. Inc.*,
   249 F.R.D. 588 (E.D. Cal. 2008) ......................................................... 15

*Doe v. City of Simi Valley*,
   No. 12-cv-8377, 2012 WL 12507598
   (C.D. Cal. Oct. 29, 2012) .................................................................. 15

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*,
   596 F.3d 1036 (9th Cir. 2010) ............................................................ 17

*Doe v. Miller*,
   573 F. Supp. 461 (N.D. Ill. 1983) ....................................................... 17

*Does 1-6 v. United States, et al.*,
   No. 2:21-cv-03254 (C.D. Cal. 2021) ........................................... 5, 10, 12

*Does I thru XXIII v. Advanced Textile Corp.*,
   214 F.3d at 1063 (9th Cir. 2000) ........................................................ 15

*Free Speech v. Reno*,
   No. 98 Civ. 2680 MBM, 1999 WL 47310
   (S.D.N.Y. Feb. 1, 1999) ................................................................ 17, 21

*Ladele v. United States*,
   No. CR 06-00125 MMM, 2010 WL 476957
   (C.D. Cal. Feb. 2, 2010) ................................................................... 12

*Publius v. Boyer-Vine*,
   321 F.R.D. 358 (E.D. Cal. 2017) ............................................... 15, 16, 17

*Serrano v. Customs and Border Patrol, U.S. Customs and*
   *Border Patrol*,
   975 F.3d 488 (5th Cir. 2020) .............................................................. 14

*Simmons v. United States*,
   390 U.S. 377 (1968) ........................................................................ 18

*United States v. Balsys*,
   524 U.S. 666 (1998) ........................................................................ 18

3

*United States v. Bluitt,*
    815 F. Supp. 1314 (N.D. Cal. 1992)............................................................10, 11

*United States v. U.S. Currency,*
    $30,060.00, 39 F.3d 1039 (9th Cir. 1994)..........................................................21

**Statutes**

18 U.S.C. § 983(a)(2), (3).....................................................................................11

18 U.S.C. § 983(a)(3)(A), (B)...............................................................................11

19 U.S.C. § 1607(a)(1) ............................................................................................9

**Other Authorities**

13 Witkin, *Summary of California Law, Pers. Prop.,* § 164 (2021) .......................10

Asset Forfeiture Manual, Department of Justice (2021),
    p. 68, Ch. 5 § II.A ...............................................................................................9

Fed. R. Civ. P. 4....................................................................................................7

Fed. R. Civ. P. 41............................................................................................ *Passim*

## I.    INTRODUCTION

As the Government once again tries to impose procedural hurdles to avoid scrutiny of its overreaching, it is worth taking a step back to consider the instant motion in the larger context of this case:

Magistrate Judge Kim specifically limited his warrant[1] by stating that it "does not authorize a criminal search or seizure" of Plaintiffs' property.  But the Government has declared its contrary intentions by arguing that Plaintiffs *must* disclose their names and box numbers because "[t]o distinguish between honest and criminal customers [of USPV], the government must examine the specific facts of each box . . .   The Executive Branch is tasked with investigating *criminal leads* [and the] public interest demands that the government pursue these leads vigorously." *Doe v. United States, et al.*, 2:21-cv-2803-RGK-MAR (Gov't Opp. to *Ex Parte*, Dkt. No. 15, at 10:13-19) (emphasis added).  In other words, the Government plainly admits that it seeks Plaintiffs' information as "criminal leads" it intends to "vigorously" pursue.

It thus comes as no surprise that the Government initiated administrative forfeiture proceedings for the contents of about 370 boxes, despite telling Judge Kim that its agents were taking the contents merely to "protect" them and return them safely to their owners.  The Government now tries to use this forfeiture maneuver and a specious argument about anonymity to avoid this Court's consideration of Plaintiffs' claims.  Indeed, the Plaintiffs' need for anonymity to protect against criminal scrutiny is only heightened now that the Government

---

[1]   The Government has stated that it was acting pursuant to *two separate warrants* issued by Magistrate Judge Kim, one permitting search and seizure of USPV property for evidentiary purposes and one permitting seizure of USPV property for forfeiture purposes.  *Does 1-6 v. United States*, No. 2:21-cv-03254-RGK-MAR (Gov't Opp. to *Ex Parte*, Dkt. No. 27, at 3:8-11).  (Gluck Decl. ¶ 12.)  But the Government has declined to unseal or produce the former and in its current motion now studiously avoids mentioning its existence.  Why?

attempts to forfeit Plaintiffs' property as criminal proceeds.  As shown below, the Government's attempt to derail Plaintiffs' claims fails.

Plaintiffs' claims challenging the Government's unjustified and unlawful conduct are properly before this Court, and the Government has failed to show that they should not be considered on the merits.

*First*, although there *were* some administrative forfeiture proceedings pending during the narrow window when the Government rushed to file this motion, those proceedings already have terminated and thus cannot provide Plaintiffs with any remedy.  As Plaintiffs have no remedy at law, the now-terminated administrative forfeiture provides no basis for dismissal.

*Second*, the now-terminated administrative forfeiture proceedings do not diminish this Court's equitable jurisdiction to hear Plaintiffs' Rule 41 or constitutional claims because the Government does not and cannot allege that it filed administrative forfeiture against (a) *all* of the boxes it seized, much less (b) *all of the contents* of those boxes.  **Each of the plaintiffs in these cases seeks the return of property – including cash, gold, jewelry, records, and other items – that is not listed on the Government's forfeiture notice.**

*Third*, Plaintiffs may proceed pseudonymously at this early stage in the case, especially because revealing their names will subject them to serious risk of Fifth Amendment injury (the Government has characterized their names as "criminal leads" and their property as criminal proceeds) and public embarrassment, and the Government is unable to articulate why it needs Plaintiffs' names – as opposed to other identifying information such as keys or biometric identifiers – to determine their ownership.  Moreover, the Government's assertion that it is prejudiced is both wrong and entirely speculative and thus, at the very least, premature.

The Government cannot use eleventh-hour administrative forfeiture notices to prevent this Court from reviewing its conduct or from considering Plaintiffs' claims. The Motions to Dismiss Plaintiffs' Complaints should be denied.

## II.     BACKGROUND FACTS

### A.      The Government's Motions to Dismiss Plaintiffs' Claims

Plaintiffs Coe, Roe, Doe, and Moe ("Plaintiffs") styled their actions against the Government as civil complaints alleging causes of action for return of property under Fed. R. Crim. P. 41(g) ("Rule 41") and for violations of the Fourth and Fifth Amendments.  In addition, after the Government filed a notice of appearance in *Coe*, Plaintiff Coe filed a separate Motion for Return of Property pursuant to Rule 41, noticed for hearing on June 7, 2021, which he served in accordance with Fed. R. Civ. P. 4.  The Government, contending that it was entitled to the 60 days permitted to respond to a civil complaint rather than the considerably shorter period to oppose a civil motion, moved this Court *ex parte* to prevent the court from considering the merits of Coe's claim on a normal motion schedule, and delay its response date to July 26, 2021.  Gov't *Ex Parte* Application to Strike, *Coe v. United States, et al.*, 2:21-cv-3019-RGK-MAR (Dkt. No. 26, May 10, 2021).  The Government said it planned to move to dismiss on July 26.  *Id.* at 5:1-12.  The Court granted the Government extra time.  Order, *Coe v. United States, et al.*, 2:21-cv-3019-RGK-MAR (Dkt. No. 30, May 11, 2021).

Despite the ostensible need for additional time to respond to Coe's and other Plaintiffs' complaints, counsel for the Government contacted Plaintiffs' counsel on May 20, 2021, to urgently request a meet-and-confer regarding its intent to file a motion to dismiss as soon as possible.  (Declaration of Benjamin N. Gluck ("Gluck Decl.") ¶ 2.)  During the May 20 phone conference, counsel for the Government informed Plaintiffs' counsel that it would move to dismiss each of the complaints on grounds that Plaintiffs could not proceed anonymously.  (*Id.* ¶ 3.)  Government counsel contended that anonymity was not permitted because (1) there was (in general, and in particular in this case) public interest in Plaintiffs' identities, and (2) the Government was prejudiced by being unable to determine whether the property sought was criminal proceeds, or whether the person claiming it was the

true box holder.  (*Id.*)  Government counsel made clear that once Plaintiffs and other box holders identified themselves, whether it would return the property depended on what the items were, whether it could find anything "derogatory about the box holder," such as whether the box holder had any criminal history, whether banks had filed suspicious activity reports about the box holder, and whether box holders' reported income justified their possession of the valuables in their box.  (*Id.*)

Attempting to reach a resolution on the anonymity issue, Plaintiffs' counsel asked whether it would change the Government's position if Plaintiffs disclosed their box numbers—Government counsel said it would not.  (*Id.* ¶ 5.)  Plaintiffs' counsel asked whether it would change the Government's position if Plaintiffs disclosed their names *in camera*—Government counsel said it would not.  (*Id.*) Plaintiffs' counsel asked whether it would change the Government's position if Plaintiffs disclosed their names to a Government "filter team"—Government counsel said it would not.  (*Id.*)  Plaintiffs' counsel asked whether it would change the Government's position if Plaintiffs disclosed their names to the Government but agreed to use pseudonyms publicly—again, Government counsel said it would not. (*Id.*)  It goes without saying that no resolution was reached on the call.  (*Id.*)

The next day, May 21, counsel for the Government requested another urgent meet-and-confer, this time to discuss an additional basis for the Government's motion to dismiss, namely that the Government "has or shortly will" file administrative forfeitures in connection with "many of" the boxes.  (*Id.* ¶ 6.) Plaintiffs' counsel asked how Government counsel knew that it was forfeiting *Plaintiffs'* possessions.  (*Id.*)  Government counsel replied: "if it's the type of person who would hire you, it's the type of person we would forfeit."  (*Id.*)  Beginning the following week, USPV and certain box holders or beneficiaries began to receive letters informing them that their property was being administratively forfeited.  (*Id.* ¶ 7.)

Despite having petitioned this Court *ex parte* for extra time, until late July, to respond to Coe's Rule 41 Motion, the Government filed the instant Motions against Coe and the other Plaintiffs on May 28, 2021, as soon as permitted after the meet and confer.  Plaintiffs submit – and demonstrate below – that this sudden rush was based on the fact that the administrative-forfeiture argument would have a very short shelf life, because these proceedings terminate as soon as a claim is filed.  Because claims have been filed for *all* of the property seized from USPV, that shelf life now has expired.

### B.   The Government's Administrative Forfeiture of Property Seized from USPV Box Holders

On May 20, 2021, one day before the 60-day deadline to forfeit the property it seized from USPV boxes, the Government initiated an administrative forfeiture of certain identified property from a minority of the boxes.  (Gluck Decl. ¶ 8.)  Of the approximately 800 boxes the Government seized, 370 were listed on the May 20 forfeiture notice sent to USPV (the "Notice").  (*Id.* ¶ 9, Ex. A [Notice].)  The Notice appeared to be a "placeholder" merely intended to meet the forfeiture deadline.  Aside from the fact that it was filed with just one day to spare, the Notice includes items that are facially ineligible for administrative forfeiture because they are obviously worth more than $500,000 – *e.g.*, well over $1 million worth of poker chips, or hundreds of ounces of gold bullion.  *See* 19 U.S.C. § 1607(a)(1); Asset Forfeiture Manual, Department of Justice (2021), at p. 68, Ch. 5 § II.A, "Administrative Forfeiture Guidelines", *available at* https://www.justice.gov/criminal-afmls/file/839521/download.  (*See* Gluck Decl. ¶ 8, Ex. A at 25.)

Indeed, the Government has tacitly acknowledged that the forfeiture proceedings are not necessarily serious by contacting some individuals whose items are listed on the Notice to inform them that it in fact intends to return their property. (Gluck Decl. ¶ 9.)

The Notice set a June 24 deadline for claimants to contest the administrative forfeiture of the particular property seized, and each of the Plaintiffs has filed a pseudonymous claim[2] for his items on the forfeiture list.  In addition, on June 11, USPV filed a claim in its capacity as bailee for all property seized from its premises, contesting administrative forfeiture of all items listed on the Notice.[3]  (*See* Gluck Decl. ¶ 11, Ex. B [USPV Claim].)  The Government does not allege that it has filed any judicial forfeiture action related to any items seized from USPV, including the property belonging to Plaintiffs.

## III.   ARGUMENT

### A.   The Now-Terminated Administrative Forfeiture Is Not Grounds for Dismissal

The Court has equitable jurisdiction to hear claims from plaintiffs seeking to recover seized property when they have no adequate remedy at law for such relief. *United States v. Bluitt*, 815 F. Supp. 1314, 1316-17 (N.D. Cal. 1992) (court has equitable jurisdiction to entertain 41(g) motions in civil cases when no other remedy is available).  The Government's administrative forfeiture initiated on May 20 does not provide such a remedy, and thus cannot deprive this Court of equitable jurisdiction to hear Plaintiffs' claims.  In the first place, because USPV has submitted a valid claim contesting the forfeiture in its entirety and because Plaintiffs also have submitted claims, there are no pending forfeiture proceedings for any of

---

[2]   *See* Order, *Does 1-6 v. United States, et al.*, 2:21-cv-03254-RGK-MAR (Dkt. No. 29, June 9, 2021) ("The Government cites no federal statute, regulation, or procedural rule that requires claimants in an administrative forfeiture proceeding to identify themselves by their legal names, nor is the Court aware of any such legal authority.").

[3]   "A bailment (called a deposit in the Civil Code) is the deposit of personal property with another, usually for a particular purpose, under an express or implied contract.  The purpose may be to use or repair, keep, transport, sell, or exchange it." 13 Witkin, *Summary of California Law, Pers. Prop.* § 164 (2021).  Plaintiffs were bailors and USPV was the bailee for the property Plaintiffs stored at USPV.

1  their property.  *See* 18 U.S.C. § 983(a)(3)(A).  Moreover, the Government does not

2  and cannot claim that it sought to administratively forfeit *all of the boxes* from

3  USPV or *all of the property* from the boxes listed on the forfeiture notice.  In fact,

4  each of the Plaintiffs here seeks the return of property *that is not listed* on the Notice

5  for the now-terminated administrative forfeiture proceedings.  Because Plaintiffs

6  seek the return of property that was not part of the administrative forfeiture

7  proceedings and is not part of any judicial forfeiture proceedings, they are entitled to

8  seek equitable relief from this Court.  *Bluitt*, 815 F. Supp. at 1316-17.

9      **1.**  **There are no pending forfeiture proceedings.**

10     Plaintiffs do not have an adequate remedy at law to contest the Government's

11  seizure of their property in violation of their Fourth and Fifth Amendment rights

12  because there are no pending forfeiture proceedings against Plaintiffs' property.

13  USPV's timely filing of a claim for all of the items listed on the Government's

14  Forfeiture Notice as bailee on June 11, as well as each of the Plaintiffs' filing of

15  timely claims, halted the administrative forfeiture of those items.  18 U.S.C.

16  § 983(a)(2), (3).  If the Government intends to pursue forfeiture proceedings against

17  any of the items on its Notice, it must now institute judicial forfeiture actions to do

18  so.  *Id.* § 983(a)(3)(A),(B).  As of the time of this filing, no such forfeiture actions

19  have been filed by the Government with respect to any of the property claimed by

20  Plaintiffs.  Thus, Plaintiffs' only option to seek return of their property and vindicate

21  their constitutional rights is by pursuing this action.  There is no basis for dismissal.

22      **2.**  **Plaintiffs each seek return of property that is not listed on**

23         **the Government's forfeiture notice.**

24     Even if the Government's Notice of administrative forfeiture established

25  pending forfeiture proceedings for purposes of this Motion (it does not), the legal

26  remedy available through such proceedings is inadequate, because each Plaintiff

27  seeks the return of seized property that was not included in the Notice.  (Gluck Decl.

28  § 10.)  Where, as here, forfeiture proceedings do not implicate *all* of the property

seized from Plaintiffs or the relief sought in connection with that property, the remedy afforded by forfeiture proceedings is necessarily inadequate.  Thus, the court retains jurisdiction to adjudicate the plaintiffs' claims for return of the property not listed in the Government's Notice, as well as other related relief.  *See Ladele v. United States*, No. CR 06-00125 MMM, 2010 WL 476957, at *3 n.25 (C.D. Cal. Feb. 2, 2010) (exercising equitable jurisdiction over plaintiff's Rule 41(g) motion as to all property whose return he sought, where Government adduced evidence that it initiated forfeiture proceedings as to only five of the seven items plaintiff sought to recover).

Each of the Plaintiffs alleged in his complaint that he possessed no mechanism to obtain return of their property other than the FBI website claim process—which the Government has described as "voluntary."  *See* Complaint, *Doe v. United States, et al.*, 2:21-cv-02803 (Dkt. No. 1, Mar. 31, 2021) at ¶ 18; Complaint, *Roe v. United States, et al.*, 2:21-cv-02919 (Dkt. No. 1, Apr. 5, 2021) ¶ 20; Complaint, *Moe v. United States, et al.*, 2:21-cv-02990 (Dkt. No. 1, Apr. 6, 2021) at ¶ 20; Complaint, *Coe v. United States, et al.*, 2:21-cv-03019 (Dkt. No. 1, Apr. 7, 2021) at ¶ 20; Gov. Opp. to *Ex* Parte App for TRO, *Does 1-6 v. United States, et al.*, No. 2:21-cv-03254 (Dkt. No. 16, Apr. 16, 2021) at 10-11 (asserting that FBI's claim procedure is voluntary).  This is in fact true today: each Plaintiff seeks the return of property that is *not* listed on the forfeiture Notice, either because the box at issue is not listed at all or because the asset description does not include all of the contents of the box in question.  (Gluck Decl. § 10.)  The Government cannot claim that it is forfeiting every item that was contained in each of the boxes on the Notice.  Must one believe, for example, that the 370 boxes the Government seeks to forfeit did not contain a single document?  (They obviously did contain many, many documents—otherwise, how did the Government identify any names associated with the boxes?)  But there are no documents listed on the forfeiture Notice.  And surely the Government does not contend that a box holder who seeks

return of such documents should be thrown out of court just because the Government purports (or purported) to seek administrative forfeiture of some other item from the same box.

Moreover, numerous box holders have reported that the amounts of forfeited property, including cash, gold, and jewelry, listed on the Notice are less than the amounts that were actually stored within the boxes. These deficiencies range from a few thousand to a few hundred thousand dollars' worth of property, depending on the box. (Gluck Decl. ¶ 10.) Considering the chaos of the search and the shambolic and inadequate purported "inventory," this is not surprising. *See* First Amend. Compl., *In re Search and Seizure of Box No. 8309*, 2:21-cv-3554 (Dkt. No. 13, May 17, 2021) and supporting exhibits) (suit regarding 40 one-ounce gold coins that were missing from property returned to USPV box holder by Government).

As to Plaintiff Coe, who identified his Box as number 904, the Government asserts that "page 5 of the notice reflects the $914,700 in U.S. currency seized from box number 904. The unredacted version of the notice lists each asset by Asset ID number (such as 21-FBI-003084 for box number 904) and the items seized (such as $914,700 for box number 904." (Declaration of FBI SSA Jessie Murray, Dkt. No. 33-5, at 46:17-21.) But that is precisely the problem with the Government's argument – Box 904 contained *more* than $914,700. The Government does not claim otherwise.[4] Coe is entitled to seek return of that property before this Court.

As to Plaintiffs Doe, Roe, and Moe, just like Coe, each of them seeks the return of property that is not listed on the forfeiture Notice. This means that the now-terminated forfeiture proceedings could never divest this Court of jurisdiction

---

[4] Even if it did, the Government *still* would have to admit that the disputed amount is not within the now-terminated administrative forfeiture and thus may be adjudicated only in this Court. The Government cannot claim both that the additional assets do not exist *and* that they are within a forfeiture proceeding.

1   because this Court is being asked to adjudicate property that was never a subject of

2   those proceedings.

3         Moreover, even if the Government *had* instituted administrative forfeiture

4   proceedings against all of Plaintiffs' claimed property (again, it has not), Plaintiffs

5   still could seek equitable relief from this Court to address their requests for

6   declaratory and injunctive relief for constitutional violations concomitant with the

7   Government's search and seizure of their property, as alleged in their respective

8   complaints.  *See Serrano v. Customs and Border Patrol, U.S. Customs and Border*

9   *Patrol*, 975 F.3d 488, 495 (5th Cir. 2020) (plaintiff's Fourth and Fifth Amendment

10  claims for declaratory and injunctive relief survived despite Government's return of

11  his property, even though Rule 41 claim for return of property was rendered moot).

12  The same is true of Plaintiffs' claims for declaratory relief on the question of

13  anonymity.  The Government does not and cannot contend that administrative

14  forfeiture proceedings provide an adequate forum for Plaintiffs to seek a

15  determination of whether they may pursue their constitutional and statutory claims

16  pseudonymously—an entirely separate question from the issue of whether they are

17  entitled to recover their property.

18        Given the termination of the administrative forfeiture proceedings, the

19  Government's failure to assert that it ever sought to forfeit *all* of Plaintiffs' property,

20  and the inadequacy of *any* forfeiture proceedings to grant Plaintiffs relief, there is no

21  basis for the Court to dismiss Plaintiffs' actions on jurisdictional grounds.  To the

22  extent the Court finds it necessary, Plaintiffs are prepared to amend their Complaints

23  to address the forfeiture issues that have arisen since the initial filing—namely, to

24  assert that Plaintiffs each seek the return of property that is not included on the

25  Notice of Administrative Forfeiture provided by the Government.[5]  The

26

27  _____

28  [5]   In light of the termination of those proceedings, this would seem unnecessary but
      Plaintiffs are nevertheless prepared to do so.

1   Government's effort to create procedural blockades should be rejected.

2       **B.**    **Plaintiffs Should Be Permitted To Proceed Pseudonymously Given**

3           **The Stage Of The Proceedings And The Balance Of The Parties'**

4           **Competing Interests**

5       Plaintiffs were well within their rights to commence this action under

6   pseudonyms,[6] and the serious threat to their Fifth Amendment rights by criminal

7   investigation or prosecution, as well as public embarrassment, that they face by

8   revealing their identities provide ample reason to allow them to continue to do so.

9   *See E.E.O.C. v. ABM Indus. Inc.*, 249 F.R.D. 588, 592 (E.D. Cal. 2008); *Does I thru*

10   *XXIII v. Advanced Textile Corp.*, 214 F.3d at 1063-1064, 1067-1068 (9th Cir. 2000).

11   Once their identities are revealed, neither Plaintiffs nor this Court can unring the

12   bell.  *Doe v. City of Simi Valley*, No. 12-cv-8377, 2012 WL 12507598, at *2 (C.D.

13   Cal. Oct. 29, 2012).  Moreover, given that Plaintiffs have asserted claims for

14   declaratory relief seeking a ruling on the precise question of whether they may

15   pursue these actions pseudonymously, dismissal of their claims on anonymity

16   grounds would be tantamount to a summary adjudication of this cause of action at

17   the pleading stage.  At this early stage in the proceedings – when discovery has not

18   yet begun and it is far from apparent that Plaintiffs' legal names are even necessary

19   to pursue or defend against their claims – there is no reason to force the issue of

20   anonymity before the Court.  *Publius v. Boyer-Vine*, 321 F.R.D. 358, 365 (E.D. Cal.

21   2017) (State was not prejudiced by plaintiff's anonymity where court found that

22   defendants could pursue discovery without Publius disclosing his identity and

23

24

25       ―――――――――――――
6      As this Court has noted, "[s]uch a rule makes sense, as the initial complaint is a

26   matter of public record, and once a plaintiff has opened a file number in federal

27   court using his or her real name, any attempt to proceed under a pseudonym would

28   be pointless."  *Doe v. City of Simi Valley*, No. 12-cv-8377, 2012 WL 12507598, at
*2 (C.D. Cal. Oct. 29, 2012).

"Defendant has not demonstrated that her defense of this case requires disclosing Publius' identity to nonparties to this suit at this time.").

This Circuit permits a plaintiff to file a claim anonymously, and to "preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity," including when necessary to "protect [the party] from harassment, injury, ridicule, or personal embarrassment." *Advanced Textile*, 214 F.3d at 1067-68. Where, as here, the circumstances requiring anonymity involve the risk of retaliatory harm to Plaintiffs, the court will consider: (1) "the severity of the threatened harm"; (2) "the reasonableness of the anonymous party's fears"; (3) "the anonymous party's vulnerability to such retaliation"; (4) the prejudice that the opposing party would face at each step of the litigation (and possible mitigating steps); and (5) whether requiring parties to use their names would serve the public interest. *Id.* (citations omitted).

In Plaintiffs' case, (1) the Government's stated intent to subject them to criminal investigation if they are required to waive their Fifth Amendment rights and disclose their legal names, (2) the absence of any particular public interest in knowing their identities, and (3) the Government's inability to articulate a need for Plaintiffs' names, in particular, *right now*, and as opposed to various other means of verifying their identities and interest in seized property, all weigh heavily in favor of maintaining Plaintiffs' anonymity. Further, the embarrassment and ridicule that Plaintiffs are likely to face if their names are made public, given the Government's repeated pronouncements of the criminality of individuals who stored property at USPV, provide further grounds to permit Plaintiffs to pursue their claims pseudonymously at this stage.

## 1. Plaintiffs face Fifth Amendment injury if they are forced to reveal their names.

Courts in this Circuit and others have recognized a plaintiff's compelling need

for anonymity where the anonymity protects the plaintiff's constitutional rights, and revealing his legal identity may subject him to criminal jeopardy. *Publius*, 321 F.R.D. at 364 (compelling need for anonymity where plaintiff's violation of and challenge to statute on First Amendment grounds subjected him to possible criminal prosecution); *Free Speech v. Reno*, No. 98 Civ. 2680 MBM, 1999 WL 47310, at *2 (S.D.N.Y. Feb. 1, 1999) (compelling need for anonymity where plaintiffs' operation of radio program without FCC license may expose them to criminal prosecution and civil penalties); *Doe v. Miller*, 573 F. Supp. 461, 464 n.1 (N.D. Ill. 1983) ("illegal aliens" could proceed anonymously in challenging policy that conditioned food stamp applications on disclosure of illegal status to INS because anonymity would protect their "rights under the 5th Amendment.").

As alleged in Plaintiffs' Complaints and discussed above, the Government has plainly admitted that it will treat Plaintiffs' names and box numbers as "criminal leads," which it will use to "vigorously" investigate them.  Further, the Government has stated to counsel that upon learning Plaintiffs' names, it will search for any "derogatory" information about them.  Moreover, the Government instituted the now-terminated administrative forfeiture proceedings against (some of) each Plaintiffs' possessions, which means that the government alleges that each of the Plaintiffs possessed proceeds of criminal activity.  Plaintiffs flatly disagree with this contention and they agree that the Government is entitled to investigate anyone it wants.  But the Fifth Amendment permits Plaintiffs to decline to *help* the Government investigate them by providing the "criminal leads" the Government demands.

Thus, Plaintiffs' fear that they will be subjected to criminal investigation – merely because they identify themselves as having stored property at USPV – is patently reasonable. *See Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010) (fear of severe harm must be reasonable).  Moreover, the risk of harm that Plaintiffs face here is severe—

revealing their names not only jeopardizes their Fifth Amendment rights, it also makes the surrender of their Fifth Amendment rights a precondition for vindicating their rights under the Fourth Amendment.  Pitting one constitutional right against another makes Plaintiffs particularly vulnerable to the risk that one, or both, of those rights will be violated if their names are disclosed.  *Simmons v. United States*, 390 U.S. 377, 394 (1968) (It is "intolerable that one constitutional right should have to be surrendered in order to assert another.").

In response to this serious threat to plaintiffs' constitutional rights, the Government cavalierly dismisses the notion that a criminal investigation is real jeopardy, asserting that the "investigation is merely an attempt to learn the facts."  Is the Government really asserting that Fifth Amendment rights do not exist until the Government marshals the "facts" and files charges?  This is not the law.  *See United States v. Balsys*, 524 U.S. 666, 716 (1998) ("[T]he Fifth Amendment affords individuals protection during the investigation . . . of a crime.") (*citing Miranda v. Arizona*, 384 U.S. 436, (1966)).

The Government's stated intent – to Plaintiffs' counsel and the Court – to follow the "criminal leads" of Plaintiffs' legal names is sufficient reason to protect Plaintiffs' Fifth Amendment rights and protect them from any obligation to disclose their names at this stage.

> **2. The Government is not prejudiced by Plaintiffs' anonymity because it fails to establish its need for Plaintiffs' legal names, as opposed to any other identifying information, now.**

The Government cannot establish that it is harmed at this time by Plaintiffs' refusal to provide their names, because the Government has not established a true immediate need for their names in the first place.  While the Government contends that it needs to determine whether Plaintiffs have a right to the property they are

claiming, it fails to explain why it needs their names to do so.[7]  There is no

indication that Plaintiffs' names, without more, will link them to any particular box,

much less prove ownership or enable the Government to identify all property

belonging to a particular Plaintiff.[8]  In addition, Plaintiffs have suggested numerous

methods of verifying their ownership of the items in their boxes other than by

disclosing their names.  They are prepared to provide their box keys, biometric

information such as 3-D hand scans and iris scans associated with the boxes, and

detailed descriptions off the box contents to demonstrate ownership.  They have

offered to provide their box numbers, or disclose their identities *in camera* or to a

filter team.  The Government has rejected all of these proposals, without explaining

how it is that an iris scan, 3-D hand scan, and box key – which all four Plaintiffs can

provide – are weaker proof of ownership than Plaintiffs' first and last names.  Nor

has the Government even tried to argue that, or explain why, the use of a filter team

is not viable.  The balance tips sharply in favor of Plaintiffs; the Government seeks

to force them to waive their Fifth Amendment rights to accomplish no real benefit to

the Government's legitimate interest here at all.

Moreover, any purported difficulties the Government claims would

complicate using these alternative methods to determine ownership must be

considered in context.  The Government seized Plaintiffs' property, shut down

USPV, dissembled the safe deposit boxes, and dismantled the biometric scanning

---

[7]   Indeed, the Government's purported need for Plaintiffs' names is a moving target.  The Government initially claimed that it needed Plaintiffs' names for the sole purpose of identifying them to return their property, as it was required to do pursuant to its search and seizure warrants and FBI policies.  It now admits that it wants to ensure there is nothing "derogatory" about Plaintiffs or other box holders that would serve as an excuse to forfeit their property rather than return it as is required.

[8]   As set out in previous filings, many boxes at USPV contained *beneficiary* information.  That is different from ownership information.

system.  Matching the owners back to their possessions after this Government intrusion is, of course, difficult.  But the bull should not be heard to complain that it requires too much effort to clean up the china shop.  The Government knew what it was doing when it made this mess and it cannot purport to fix it at the expense of Plaintiffs' Fourth and Fifth Amendment rights.  The Government seized the biometric systems and it can and should use those same systems, which box holders also relied on for years, to match claimants with boxes.  Legal names simply are unnecessary now.[9]

### 3. The public's interest in Plaintiffs' identities is *de minimis* at best, and no greater than in any other proceeding.

The Government notes that there have been several news stories about this case.  This is true.[10]  But the public interest in this matter stems from the public's incredulity at the Government's unjustified conduct, and not any desire to identify the particular Plaintiffs seeking redress for that conduct.[11]  In any event, Plaintiffs did not seek out public attention; rather, they were thrust into it by the Hobson's choice the Government put to any individuals seeking to recover their unlawfully seized property and protect their Fourth and Fifth Amendment rights.  Moreover, as

---

[9]   Of course, the Court can always reconsider this issue later in light of discovery issues or other matters as the case may progress.

[10]   *See*, *e.g.*, FBI Wants To Keep Fortune In Cash, Gold, Jewels From Beverly Hills Raid. Is It Abuse Of Power?, *Los Angeles Times*, at page A1, June 9, 2021, available at https://www.latimes.com/california/story/2021-06-09/fbi-beverly-hills-safe-deposit-boxes-forfeiture-cash-jewelry; FBI Holding On To Valuables Seized In Safe Deposit Box Raid, *CNN Broadcast*, June 12, 2021; available at https://www.msn.com/en-us/news/politics/fbi-holding-on-to-valuables-seized-in-safe-deposit-box-raid/vi-AAKYAJE.

[11]   Further, any interest the public could *possibly* have in learning Plaintiffs' identities needs to be balanced against the embarrassment and ridicule the Government has subjected them to by painting USPV box holders with a broad brush as criminals.

far as the public is concerned, the Plaintiffs in these cases merely stand in for the hundreds of box holders whose property was wrongfully searched and seized (and in many cases forfeited) in violation of their Fourth and Fifth Amendment rights. "[B]ecause the particular plaintiffs in this constitutional challenge are essentially interchangeable with similarly situated persons, there appears little public interest in which particular persons have actually sued." *Free Speech v. Reno*, No. 98 Civ. 2680, 1999 WL 47310, at *3 (S.D.N.Y. Feb. 1, 1999).[12]

_____

[12]   Though they do not seem to be a fundamental part of the Government's argument, Plaintiffs must address the "throwaway" assertions in the Government's brief, and gladly will brief them further should they be relevant to the Court's ruling.

First, the Government again trots out the same allegation that "drug sniffing dogs alerted to most of the stashes of cash" that it has mentioned previously. Note: (1) marijuana is legal in California; (2) the Government alleges that the USPV manager was dealing drugs *inside the vault*; (3) the photos of the search show that the cramped and chaotic circumstances of the Government's search would have guaranteed cross-contamination among the items in the vault; (4) the law "has never held that the mere fact of a narcotics dog's positive alert to a large sum of money constitutes sufficient evidence to establish probable cause for forfeiture," due to the "contamination of America's paper money supply," *United States v. U.S. Currency*, $30,060.00, 39 F.3d 1039, 1042 (9th Cir. 1994); and (5) the Government deposited the seized cash, which means it cannot present evidence of any purported contamination in any event.

Second, the Government repeatedly refers to "cash stashes," "anonymous stores of wealth" and "anonymously stored valuables." Despite such pejorative language, it is worth recalling that USPV was a well-advertised storefront in Beverly Hills. The items stored there were no more "stashes" than items stored at the bank a block away, and the people who stored them there had no reason to expect Government agents to break them open. Far from "anonymously stored," they were associated with the clients' indelible biometric information. One does not usually put one's name on items meant to be held privately and just because something doesn't have a name on it, that doesn't make it "anonymous." It is only when the Government asserts that it will criminally investigate the box holders that people become justifiably reluctant to give their names.

## IV.    CONCLUSION

The administrative forfeiture proceedings have terminated and each plaintiff here seeks return of property that was never identified as having been within those proceedings in the first place.  The Government has forthrightly admitted that it will criminally investigate Plaintiffs by using their names as "leads" and there exist other mechanisms to identify Plaintiffs besides disclosing their legal names.  Moreover, any claim of prejudice is entirely speculative at this time.

Plaintiff Richard Roe respectfully requests that the Court deny Defendants' Motion.


DATED:  June 15, 2021          Benjamin N. Gluck
                               Nicole R. Van Dyk
                               Ashley D. Bowman
                               Naomi S. Solomon
                               Bird, Marella, Boxer, Wolpert, Nessim,
                               Drooks, Lincenberg & Rhow, P.C.


                               By:     /s/ Benjamin N. Gluck
                                      _____
                                         Benjamin N. Gluck
                                     Attorneys for Plaintiff John Doe